IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 1, 2024

## STATE OF TENNESSEE v. JORDAN DANE WEATHERSPOON

**Appeal from the Circuit Court for Hardin County**
**No. 22-CR-129     J. Brent Bradberry, Judge**

——————————————————

**No. W2023-01175-CCA-R3-CD**

——————————————————

A Hardin County jury convicted the Defendant, Jordan Dane Weatherspoon, of one count of the sale of .5 grams or more of cocaine, and he later pleaded guilty to two additional counts of the sale of .5 grams or more of cocaine. The trial court sentenced the Defendant to an effective sentence of ten years of incarceration as a Range I offender. On appeal, the Defendant contends that the trial court erred when it denied his request for an alternative sentence. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN W. CAMPBELL, SR., and JILL BARTEE AYERS, JJ., joined.

Benjamin S. Harmon, Savannah, Tennessee, for the appellant, Jordan Dane Weatherspoon.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball; Senior Assistant Attorney General; J. Neil Thompson, District Attorney General; and Morgan B. Reynolds, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's participation in selling drugs to a confidential informant ("CI"). A Hardin County grand jury indicted him on three counts of selling .5 grams or more of cocaine. The Defendant asked that the counts be severed. The State responded and noted that the drug task force had used the CI on three occasions to purchase drugs from the Defendant on the following dates and in the following quantities: .87 grams of cocaine on March 7, 2022, 1.25 grams of cocaine on March 23, 2022, and .81 grams of cocaine on April 22, 2022. The State asked the trial court not to sever the Defendant's

charges. On May 2, 2023, the trial court entered an agreed order to sever the Defendant's offenses for trial.

The trial court held a jury trial on Count 1, and the Defendant has not included a copy of the transcript from that trial, or the accompanying exhibits, in the record. On June 23, 2023, the Defendant entered a request to plead guilty to Counts 2 and 3. The Defendant also did not include a copy of the transcript from the guilty plea hearing. The trial court accepted the guilty pleas and held sentencing hearings on July 17 and July 19, 2023. There is no factual summary in the presentence report, and there is little information included in the record other than the dates the offenses occurred.

The parties presented the following evidence at sentencing: The State noted that the three offenses for which the Defendant was being sentenced were nearly identical and that they were all Class B felony offenses. The State asked the trial court to consider the proof that it heard at trial regarding the one offense tried before a jury, and it called the trial court's attention to "statements made by the [D]efendant on the recording that was played for the jury," which was made an exhibit at trial. According to the State, on this recording the Defendant is heard saying, "You like that shit; don't you" to his customer and also that he indicates that he will have more cocaine to sell later that evening. A video of this transaction is included in the record and, while the statements of the Defendant are not entirely clear, it appears the State's assertions about them were accurate.

The Defendant's attorney indicated that these three offenses occurred within a six-week period, and he called the trial court's attention to the testimony at trial that included that "the three instances were p[art] of an ongoing investigation per the TBI's guidelines" meaning that this was not three separate investigations that lead to the same defendant but one investigation that included the Defendant. Defendant's counsel noted that the Defendant only had one misdemeanor conviction twenty years prior, no felony convictions, and no prior violations of any probationary sentence. Defendant's counsel asked for an alternative sentence.

Tennessee Bureau of Investigation Agent Alan Hooper, a Drug Task Force agent, testified that he was the case agent for each of these offenses. He reviewed the footage returned by his CI, and the agent noted that the Defendant came from a back bedroom of his mother's house to the kitchen where he met the CI. The Defendant objected, and the trial court indicated that the video introduced at trial speaks for itself, so the State moved on in questioning. The agent also testified that the Defendant can be heard on the video saying that he was going to "reup," a term used to indicate that he can resupply the cocaine.

Agent Hooper indicated that the Defendant was unemployed during these events, other than making and reselling t-shirts. On the video, the Defendant also indicated that he went to an "unknown individual" on multiple occasions to purchase the drugs that he resold. Agent Hooper said that this was not "normal" in the drug culture.

2

During cross-examination, Agent Hooper testified that there was no one else present in the home during the drug transactions.

The parties then stipulated to the presentence report being admitted into the record. Tim Baker, the officer who created that report, testified that the Defendant admitted to using marijuana occasionally, trying it first while in college, and alcohol socially.

The Defendant testified that what he did was wrong but that it made him realize that he can help change the community. He expressed a desire to speak to children in the community so that they may not take the same steps that he had taken. The Defendant indicated that he never profited from any of these transactions, or from any other drug transactions, and that he earned a living by selling t-shirts. He also was on disability for an enlarged heart and received a monthly disability check. The Defendant said that he made "pretty good" money selling t-shirts and that he did not report that income to Social Security.

The Defendant testified that he and his mother had a good relationship and that his mother's health was failing. He said that he is the sole provider for her and that she will need him for her upcoming surgeries.

The Defendant said that he had previously been convicted of a misdemeanor marijuana offense in 2000 and of possessing a weapon when he was eighteen years old. He said he was transporting a weapon for his brother, and he pleaded guilty to the offense. He was placed on probation and successfully completed his probationary period. The Defendant asked the trial court to give him a second chance and order him to serve his sentence on probation.

The Defendant testified that he had known the CI since the CI was a child, and he considered him a friend. He said he did not harbor ill will against him or want to seek retribution.

During cross-examination, the Defendant testified that he originally had four siblings but three of them had passed away and one of them was in Alabama. He said that he also had two daughters, both minors and both living with their mother. The Defendant agreed that he received a $21,000 check for his disability and that he spent $4,000 of that on a "side-by-side" all-terrain vehicle. He did not pay the child support that he owed to the mother of his children. The Defendant explained that he was told that his child support was going to be garnished from his disability check.

The Defendant called several witnesses on his behalf, including his mother and his brother. His mother testified that the Defendant had lived with her for twenty years and that he helped her with daily tasks at home and with her medical care. She said she had

3

never known the Defendant to be involved in any criminal activity. She described the Defendant as "an amazing father," and she believed that he would be a good community leader if given probation.

Leroy White, III testified about his military service and work in the church and for volunteer projects. He said that he had known the Defendant since the Defendant was a small child and that the Defendant had been nothing but a "swell kid." He did not know him to be involved in any criminal activity. He said that he would help the Defendant find volunteer positions in the community, if the trial court granted the Defendant an alternative sentence.

Clarence Eugene Hardimon testified that he was the Defendant's neighbor and had known him for the Defendant's whole life. He described the Defendant as "a very decent young man." He gave his opinion that the Defendant would be successful on probation and a help to the Defendant's mother.

Darby Broadway, a substance abuse counselor for the Turney Center, also said she had known the Defendant for an extended period of eleven years. She described her friendship with the Defendant and said that she was around him on a regular basis, never having seen him engage in criminal activity. Ms. Broadway described how the Defendant had cared for his mother and also on occasion helped Ms. Broadway. Ms. Broadway described the Defendant's work with youth in the community and said she would support him if he were given probation.

Joseph Knight testified that he had known the Defendant, whom he described as like a brother to him, for twenty-seven years. He had never known the Defendant to engage in criminal activity. He described the Defendant as "encouraging" and said that he did not judge him differently for making a mistake. Mr. Knight described an instance in his own life when the Defendant helped him. During cross-examination, Mr. Knight agreed that he had previously been fired from the City of Adamsville for theft and official misconduct.

Matt McDonald testified that he considered the Defendant a brother and that he had helped to take care of the Defendant's mother since the Defendant had been incarcerated. He said he had never known the Defendant to be involved in criminal activity. He described how the Defendant cared for his mother and ensured she had everything she needed. Mr. McDonald described the Defendants community service.

Based upon this evidence, the trial court found that the Defendant had a history of criminal convictions in addition to those necessary to establish his range, but it gave that enhancement factor little weight. The trial court applied one mitigating factor, that the Defendant's offense did not threaten serious bodily injury to anyone. The trial court considered all the relevant sentencing factors, and then it sentenced the Defendant to ten years for each of his three convictions. It ordered the sentences to run concurrently for a

total effective sentence of ten years. The trial court found that an alternative sentence would depreciate the seriousness of these offenses and denied the Defendant's request for an alternative sentence. The trial court noted that, after jail credit and the Defendant received "good time" credit, he would be eligible for release in April of 2026.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his request for an alternative sentence based upon depreciating the seriousness of the offenses. The State counters that the Defendant waived our review by not providing a complete record.

The Tennessee Supreme Court has recognized that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Our supreme court has stated that "the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions." *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) (citing *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013)). This includes questions related to probation or any alternative sentence and also whether to grant or deny judicial diversion. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying standard to probation and alternative sentence).

A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn.2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*. at 554; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

The "presumption of reasonableness" applied to sentences imposed by trial courts "'reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case." *Bise*, 380 S.W.3d at 703 (quoting *Rita v. United States*, 551 U.S. 338, 341 (2007)). A presumption of reasonableness "simply recognizes the real-world circumstance that when the judge's discretionary decision accords with the [Sentencing] Commission's view of the appropriate application of [sentencing purposes] in the mine run of cases, it is probable that the sentence is reasonable." *Rita*, 551 U.S. at 350-51.

In conducting its review, this Court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report;

5

(3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. §§ 40-35-102, -103, -210 (2019); *see also Bise*, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. *See* T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

In this case, the Defendant has failed to ensure a complete record on appeal. He has not included a transcript of the trial or the transcript from his guilty plea hearing. "When a party seeks appellate review[,] there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993); Tenn. R. App. P. 24. To this end, an appellant's failure to include the trial transcript on appeal in the record generally results in a waiver of a sentencing challenge. *See State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Moreover, "in the absence of a record adequate for review, this court must presume that the trial judge ruled correctly." *State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993) (citation omitted). Because the Defendant failed to provide a complete record on appeal, he has waived our review of whether the trial court erred when it denied him an alternative sentence.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

6